**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AUTOMOTIVE TECHNOLOGIES
INTERNATIONAL, INC.,

        Plaintiff,

v.                                  Case No. 06-15756

SIEMENS VDO AUTOMOTIVE
CORPORATION, ET AL.,

        Defendants.
                                  /

**OPINION AND ORDER SUSTAINING DEFENDANTS' OBJECTIONS,**
**REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,**
**AND GRANTING DEFENDANTS' MOTION FOR ATTORNEY FEES**

On August 16, 2010, the Magistrate Judge filed a "Report and Recommendation" ("R&R") on a motion for attorney fees filed by Defendants Continental Automotive Systems U.S., Inc., TRW Automotive U.S., L.L.C., and TK Holdings, Inc.[1] Defendants filed their objections to the R&R on August 30, 2010. Plaintiff responded on September 13, 2010, and Defendants filed a reply on September 20, 2010. For the following reasons, the court sustains Defendants' objections and awards costs and fees in the amount of $2,044,645.25.

---

[1]Only Defendants Continental Automotive Systems U.S., Inc., TRW Automotive U.S., L.L.C., and TK Holdings, Inc. have moved for attorney fees. For simplicity, these three Defendants, and only these three Defendants, are referred to as "Defendants" in this opinion.

## I. BACKGROUND

This case began in December 2006 when Plaintiff filed a complaint, which was amended in October 2007, alleging Defendants were infringing on five of Plaintiff's patents. Throughout the course of extensive litigation, Plaintiff voluntarily dismissed one patent from the suit, and Defendants prevailed on summary judgment with respect to the other four patents, each of which the court declared invalid in an October 30, 2009 order. In that order, the court held that U.S. Patent Nos. 7,025,379 ("'379 Patent"), 7,052,038 ("'038 Patent"), and 7,070,202 ("'202 Patent") were invalid because they were obvious over or anticipated by U.S. Patent No. 5,566,974 ("'974 Mazur Patent"). (Order 8-25.) The court specifically rejected Plaintiff's contentions that 1) it could "swear behind" (i.e., show prior conception for) these three patents, 2) the patents were entitled to an effective filing date of July 9, 1991 (which would have predated the '974 Mazur Patent) based on some earlier U.S. Patent Nos. 5,231,253 ("'253 Patent") and 6,009,970 ("'970 Patent"), 3) the '038 Patent should have been a continuation-in-part of the '970 Patent, and 4) the '038 Patent was not anticipated by the '974 Mazur Patent because the latter does not teach a transfer structure element. (*Id.*)

The court held that Plaintiff could not show prior conception or constructive reduction to practice based on the '253 Patent, because in previous litigation it had declared that patent non-enabled. (*Id.* at 13-15.) Similarly, the court found that Plaintiff could not show conception based on some combination of the '253 Patent with the '970 Patent because the '970 Patent also did not meet the enablement requirements of 35 U.S.C. § 112, since it fails to "disclose essential portions of the three patents," namely the side impact sensors, microprocessor, algorithm, or movable sensing mass. (*Id.* at

2

16-19.) For the same reason of lack of enablement, the court held that Plaintiff could not utilize the '253 Patent's priority date for the patents-in-suit and the '038 Patent could not be reissued as a continuation-in-part of the '970 Patent. (*Id.* at 19-22.) The court found the transfer structure element obvious, relying on Plaintiff's admission of that fact, and therefore the '038 Patent was rendered obvious by the '974 Patent. (*Id.* at 22-25.)

The court held the '824 Patent invalid as anticipated or rendered obvious by U.S. Patent No. 5,439,249 ("'249 Steffens Patent"), and also granted the summary judgment motion regarding this patent on the basis of Eastern District of Michigan Local Rule 7.1, because Plaintiff failed to file a response to the motion despite its purported opposition. (*Id.* at 25.)

On December 1, 2009, Defendants filed the pending motion for attorney fees pursuant to 35 U.S.C. § 285. That motion was referred to Magistrate Judge Scheer, who issued the R&R that is currently under consideration by the court. The R&R describes the procedural history of the case and the legal standard for awarding attorney fees under 35 U.S.C. § 285 before turning to a substantive analysis of the motion. (R&R 1-5.) In considering the Plaintiff's failure to respond to the motion for summary judgment on the invalidity of the '824 Patent, the Magistrate Judge wrote:

> Defendants, however, would have saved little [if Plaintiff had concurred in the motion], since their effort in drafting the Motion would necessarily have preceded Plaintiff's concurrence with it. Thus, while I am satisfied that ATI might well have recognized and conceded the inadequacy of its '824 patent claims earlier in the case, I do not find that its failure to do so constitutes conduct so inequitable as to render this case "exceptional" for purposes of Section 285.

(*Id.* at 7-8.) In determining whether the litigation of the '379, '038, or '202 Patents could render the case exceptional, the Magistrate Judge recommended:

3

> I am satisfied that it is unnecessary to review in detail the parties' various arguments on summary judgment or the court's detailed analysis in rendering a decision favorable to the Defendants. Multitudes of cases are decided on motions for summary judgment, and such a disposition is certainly not, in itself, exceptional. The court has rendered a decision and granted a judgment adverse to the Plaintiff. That disposition plainly supports the conclusions that ATI prosecuted a weak case. Nothing in that fact alone, however, constitutes evidence, to say nothing of clear and convincing evidence, that this litigation was unreasonable or frivolous.
>
> . . . While Plaintiff's efforts were unsuccessful, I do not find that its theories were so insubstantial as to be frivolous. For their part, the movant's attorneys billed nearly $2 million for time devoted to overcoming Plaintiff's arguments from March through November 2009. I tend to doubt that defeating insubstantial and frivolous legal arguments would require such an investment of efforts and recources [sic] by highly competent patent counsel. It is clear that Plaintiff misjudged the limits of its patent rights. I find no clear and convincing evidence that it did so vexatiously or wholly without basis. Plaintiff was wrong in its assessment. That result is hardly exceptional. Litigation generally leaves one party or the other in the same condition.

(*Id.* at 9-10). In the Magistrate Judge's opinion, Plaintiff did not act in bad faith or engage in misconduct during the litigation, and the R&R cites Plaintiff's voluntary dismissal of the '201 Patent claims and its abandonment of its '824 Patent claims at the summary judgment stage in support of this proposition. (*Id.* at 10-11.)

## II. STANDARD

### A. Review of Reports and Recommendations

The filing of timely objections to a Magistrate Judge's R&R requires the court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *accord United States v. Raddatz*, 447 U.S. 667, 673-82 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all of the relevant evidence previously reviewed by the magistrate to

4

determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

## B. 35 U.S.C. § 285

The attorney fees provision of Title 35 plainly provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Once a party has been determined to be the prevailing party in a suit—an uncontested matter in this case—awarding fees pursuant to § 285 is a two-step process. First, the district court must determine whether the case is an "exceptional" one by clear and convincing evidence, worthy of deviating from the so-called "American Rule" that each party bear its costs in litigation. *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007). Second, even if the case is exceptional, the award of fees remains within the court's discretion. *Id.*

The Federal Circuit has, on many occasions, opined on the meaning of "exceptional" in § 285. A case may be exceptional if a plaintiff brings or maintains a suit that he knows, or reasonably should know, is baseless or frivolous. *See id.* at 1367; *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329-30 (Fed. Cir. 2003); *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993), *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990). A logical extension of this principle is that, once a plaintiff is confronted with prior art or other facts that render the patents-in-suit invalid, the maintenance of or persistence in that lawsuit can lead to a finding of exceptionality. *See Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 693 (Fed. Cir. 1984); *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 123-26 (Fed. Cir. 1984).

5

Factors to consider in the exceptionality inquiry include inequitable conduct before the Patent Office, misconduct in litigation, "vexatious, unjustified, and otherwise bad faith litigation," and whether the suit is frivolous. *Forest Labs.*, 339 F.3d at 1329.

> In the context of fee awards to prevailing accused infringers, we have observed that § 285 is limited to circumstances in which it is necessary to prevent "a gross injustice" to the accused infringer, . . . and have upheld findings of exceptionality to prevent such an injustice only when the patentee has procured its patent in bad faith (i.e., committed inequitable conduct before the Patent Office) or has litigated its claim of infringement in bad faith.

*Id.* (citations omitted). "[Federal Circuit] case law provides wide discretion to district courts" in determining whether a case is exceptional. *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008); *accord nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006).

In Defendants' objections, they contend that the Magistrate Judge erred insofar as the R&R suggests that the "exceptional" finding is limited to cases in which such a finding "is necessary to prevent 'a gross injustice'," *Forest Labs.*, 339 F.3d at 1329, or to those where, absent misconduct in litigation, there is both objective baselessness and subjective bad faith, *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), or to those cases where the patentee displayed bad faith. (Defs.' Objections 12-15.) Plaintiff counters that the Magistrate Judge did not rely solely on these statements of the exceptionality standard, and that even if he had, these are not incorrect statements of law. (Pl.'s Resp. 2, 5.)

The Federal Circuit has outlined multiple formulations of what constitutes an exceptional case, and while those formulations can be read to conflict, the better reading is that there are a number of different ways by which a case may become

6

exceptional for § 285 purposes.  The Magistrate did not err in citing to these various formulations, and the parties cite to much of the same body of law.

A few examples will suffice to demonstrate how the case law need not be read to outline a definitive standard.  For instance, the court need not explicitly find a "gross injustice," but rather the prevention of a "gross injustice" is the purpose behind § 285.  That is, a "gross injustice" might result if the court failed to award attorney fees in an exceptional case.  Similarly, the Magistrate's observation that attorney fees are most often awarded in cases involving subjective bad faith (a proposition that has support in the case law, *see Rohm & Haas*, 736 F.2d at 691-92) does not mean the court must find bad faith in order to award attorney fees; rather, the existence of subjective bad faith is a factor that would argue in favor of finding a case exceptional.  The Federal Circuit's statement that "[a]bsent misconduct in conduct of the litigation," a case must have both subjective bad faith and objective baselessness, *Brooks Furniture*, 393 F.3d at 1381, is not incorrect.  "Misconduct in conduct of the litigation" presumably embraces the maintenance of a suit that a plaintiff-patentee knew or should have known was baseless, regardless of subjective bad faith.  Alternatively, maintenance of a suit in the face of clear evidence of invalidity may evidence subjective bad faith.  These various formulations of the exceptionality standard are not exclusive tests, but rather are statements of law that may be more or less applicable in different factual contexts.

### III.  OBJECTIONS

Defendants do not number their objections, although they point to "at least five significant errors" in the R&R.  (Defs.' Objections 1.)  The fifth alleged error has been addressed above in Part II of this opinion, as it relates to the proper exceptionality

7

standard. The court here will consider the remaining four asserted errors. As an initial matter, the court finds, as stated above, that Defendants are the prevailing party for the purposes of § 285, as Defendants prevailed on summary judgment with respect to each of Plaintiff's patents.

### A. Necessity of a Detailed Review of Issues on Summary Judgment

Defendants point to the Magistrate's comment,

> I am satisfied that it is *unnecessary to review in detail the parties' various arguments on summary judgment or the court's detailed analysis* in rendering a decision favorable to the Defendants. Multitudes of cases are decided on motions for summary judgment, and such a disposition is certainly not, in itself, exceptional. The court has rendered a decision and granted a judgment adverse to the Plaintiff. That disposition plainly supports the conclusions [sic] that ATI prosecuted a weak case. Nothing in that fact alone, however, constitutes evidence, to say nothing of clear and convincing evidence, that this litigation was unreasonable or frivolous.

(R&R at 9 (emphasis added).) Defendants argue that a detailed analysis was indeed necessary to determine that this case is an exceptional one. (Defs.' Objections 9-10.) Plaintiff responds by noting that just because the Magistrate "decided not to burden the Report with an exegesis" of the summary judgment issues does not mean that he did not consider the arguments with care. (Pl.'s Resp. 1.)

The court agrees that the Magistrate Judge should have explained in greater detail the arguments and opinion on summary judgment within the R&R, regardless of how carefully those factors were considered outside of the R&R. A finding of exceptionality is a function, in part, of how close the case was, *Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 934 (Fed. Cir. 1994), and Defendants advanced arguments in their motion for fees under § 285 that were premised on their assertion that this case was not close. A more detailed analysis will often be necessary in

8

complex cases where the prevailing party moves for § 285 costs to deter a plaintiff from throwing a host of complex but baseless arguments at the court, hoping that at least one of them sticks, or at least sticks enough to allow the plaintiff to avoid § 285 fees. This case is a prime example of why such an analysis is necessary.

Although it was error for the Magistrate Judge not to have provided a more detailed analysis, because this court undertakes a *de novo* review of the proposed findings and recommendations presented by the R&R, Defendants have not been prejudiced, as their arguments relating to the issues on summary judgment are considered below.

### B. Fees as Circumstantial Evidence of Exceptionality

The R&R observed that Defendants "billed nearly $2 million for time devoted to overcoming Plaintiff's arguments" and relied, in part, on that amount as circumstantial evidence that Plaintiff's claims were not insubstantial and therefore that the case was not exceptional. (R&R 10.) Defendants complain that most of the costs were spent on discovery that was necessitated by the maintenance of the suit. (Defs.' Objections 11-12.) Plaintiff relies on the reasoning presented in the R&R, and adds further circumstantial evidence that not all of the defendants in the case moved for § 285 fees, which Plaintiff suggests may be interpreted as the recognition by those defendants that Plaintiff's case was not so frivolous as to warrant the award of fees and costs. (Pl.'s Resp. 4 & n.4.)

It should come as no surprise to attorneys that litigation, and in particular patent litigation, can be very expensive, even where frivolous claims are involved. In some cases, evidence of the amount expended may serve as a useful guide to the substance

9

of the claims.  In this case, while the court does not find the amount expended on attorney fees to be helpful, this point of error is not dispositive of the motion, nor are the reasons why some defendants chose not to move for § 285 fees persuasive.  It is not for the court to consider the multitude of reasons that may go into the strategic decision not to move for fees.

### C.  '379, '202, and '038 Patents

Defendants contend that the R&R erred in finding there was not clear and convincing evidence that Plaintiff knew or should have known that the '379, '202, and '038 Patents were invalid.  (Defs.' Objections 5-8.)  Defendants argue that they made Plaintiff aware of the '974 Mazur Patent in March 2009, and at that point Plaintiff knew or should have known that the three patents were invalid.  (*Id.* at 6.)  Defendants further argue that Plaintiff "never disputed" that '974 Mazur predated the '379 and '202 Patents, and that Dr. Breed's admission of the obviousness of the transfer structure element meant that Plaintiff could not contest that '974 Mazur predated the '038 Patent.  (*Id.* at 7.)

In response, Plaintiff argues that it reasonably believed that it could show conception or constructive reduction to practice prior to the '974 Mazur Patent's priority date by some combination of the '253 and '970 Patents, and that there was no Federal Circuit precedent that prohibited using two or more documents to show conception or constructive reduction to practice.  (Pl.'s Resp. 2-3.)  Plaintiff asserts that the "Rule of Reason" governs the conception analysis, and also that "[h]ad the court agreed . . . that [Plaintiff] was entitled to a 1991 invention date, none of the art cited . . . would have qualified as prior art."  (*Id.*)

10

Contrary to the Magistrate Judge's recommendation, the court agrees with Defendants that there was clear and convincing evidence that Plaintiff should have known that the '974 Mazur Patent rendered the '379, '202, and '038 Patents obvious. Plaintiff's argument that there was no Federal Circuit precedent prohibiting it from relying on two or more references to show conception or reduction to practice misses the point of Defendants' arguments and the court's order granting summary judgment on these three patents. Plaintiff lost at summary judgment, not because the court held it could not combine the two references, but rather because neither reference could be relied upon, as neither was enabled. Moreover, Plaintiff should have known that it could not rely on the previously-declared non-enabled '253 patent, and further that the '970 Patent did not disclose essential elements of the three patents-in-suit, and therefore could not enable the inventions claimed in those patents. *See Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1305 (Fed. Cir. 2003) ("[F]or a party to be entitled to the benefit of an earlier application as a constructive reduction to practice of a count, the earlier disclosure must both describe the invention and enable one of ordinary skill in the art to make it . . . .")*.*

Plaintiff's reach for the rule of reason and its invitation to engage in a thought experiment regarding what case might be before the court "[h]ad the court agreed" with Plaintiff betray a knowledge of the underlying weakness of its case and the frivolousness of the validity assertions. Those arguments suggest that this case was a close one, when in fact it was not: in light of the fact that the '253 Patent was non-enabled, which Plaintiff had known for four years at the time of summary judgment, *see Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 378 F. Supp. 2d 780, 820 (E.D. Mich.

2005), Plaintiff knew or should have known that it could not rely on the '253 or '970 Patents to obtain the 1991 priority date. *See Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 934 (Fed. Cir. 1994) (affirming exceptional case finding where district court found case "was not close"); *see also nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006).

With regard to the transfer structure obviousness issue, Plaintiff claims that "challenging mechanical concepts are often 'obvious'" to Dr. Breed, and so, the argument goes, Plaintiff's position that the '038 Patent was not obvious over the '974 Mazur Patent was "not . . . so objectively meritless as to warrant an 'exceptional' case finding." (Pl.'s Resp. 4.) The court disagrees. The admission of a party, and an expert in the relevant field, that the only distinguishing element of an invention from the prior art would have been obvious to one of ordinary skill in the art, is an admission that the patent is invalid. The party's attorneys may not then contend that there was an objective basis for claiming that the patent was valid, short of a claim that the patent could predate the prior art. For the reasons noted above, Plaintiff had no objective basis for claiming an earlier priority date.

Plaintiff had notice of the prior art rendering the '379, '038, and '202 Patents invalid in March 2009, but continued to litigate the suit through summary judgment. The court found that Plaintiff's attempt to save the '038 Patent by applying for a reissue of the patent as a continuation-in-part of the '970 Patent after Defendants filed their motion for summary judgment constituted a delay tactic, further evincing Plaintiff's bad faith in persisting in its claims of validity. (*See* Order 19-22.) For the aforementioned reasons, Plaintiff maintained its suit in the face of clear evidence that the three patents were

12

invalid, grasping at exceptionally weak legal arguments to save its patents, and needlessly forcing Defendants to incur the costs of litigation. These facts lead the court to the conclusions that 1) Plaintiff knew or should have known its patents were invalid, 2) Plaintiff's claims were objectively baseless, and 3) Plaintiff engaged in conduct during the course of litigation that suggests bad faith.

### D. '824 Patent

Defendants next argue that Plaintiff's conduct regarding the litigation of the '824 Patent makes this case an exceptional one. (Defs.' Objections 8-9.) The court agrees. Defendants argue that 1) the claims of the '824 Patent were overbroad, 2) Plaintiff was presented with six prior art references, 3) Plaintiff failed to respond to the motion for summary judgment, and 4) Plaintiff stated in December 2008 that it expected to drop the '824 Patent from the suit and failed to do so. (*Id.*)

In rebuttal, Plaintiff correctly points out that breadth of claims is not a reason in itself to find that Plaintiff knew or should have known the patent was invalid. (Pl.'s Resp. at 4.) In addition, the presentation of six prior art references does not necessarily mean that Plaintiff could not have in the course of litigation shown the '824 Patent's validity over those references.

However, Plaintiff's response offers little to explain why, despite its indications to this court that it planned in December 2008 to drop the '824 Patent from the suit, it proceeded to summary judgment on the patent but failed to file a response to Defendants' summary judgment motion. On these points, Plaintiff has only to say that it "did not needlessly run up the cost" after "[i]t did became [sic] apparent late in the litigation" to Dr. Breed, while he was being deposed, that the '824 Patent was invalid.

13

(*Id.*) This suspiciously convenient revelation strongly suggests both persistence in a suit when Plaintiff should have known the '824 Patent was invalid, and bad faith on Plaintiff's part in maintaining its '824 claim.

## IV. MEASUREMENT OF REASONABLE ATTORNEY FEES

Because this is an exceptional case where an award of attorney fees is appropriate, the remaining question for the court is what fees constitute "reasonable" fees in this case.

### A. Standard

The "lodestar" approach is the proper method for determining the amount of reasonable attorney fees. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983)). A court determines the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Hensley*, 461 U.S. at 433-34. "The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed." *Id.* That amount can then be adjusted based upon twelve factors bearing on reasonableness.[2] *Id.* at 430 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

---

[2] Once the lodestar is calculated, the fee may be adjusted in consideration of the following twelve factors: (1) time and labor, (2) difficulty of the case, (3) skill necessary, (4) the extent the attorney is precluded from working on other matters, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the time limitations, (8) the amount involved and the results obtained, (9) the attorney's experience, reputation, and ability, (10) the undesirability of the case, (11) the nature and length of the attorney-client relationship, and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

14

## B. Reasonable Hourly Rate

A reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11. An attorney fee award must be "adequate to attract competent counsel, but . . . not produce windfalls to attorneys." *Id.* at 897 (internal quotations and citations omitted).

In considering the *Johnson* factors in the context of patent litigation, the reasonable rate may be greater than in other areas of practice because of the expertise required to litigate cases, because higher fees are customary in that specialty, and because of the desirability and arguable necessity of seeking counsel outside of the immediate geographic region. *See iLOR, LLC v. Google, Inc.*, 2009 WL 3367391, at *5-6 (E.D. Ky. Oct. 15, 2009) (finding rates ranging from $764.75 to $220 per hour reasonable "in light of the national and specialty aspects of the work involved" in the context of litigation in Kentucky); *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1195-97 (E.D. Pa. 1990) (relying on the AIPLA survey to find out-of-state attorney rates reasonable in a patent case). The claimed costs and fees must be supported by evidence of the reasonableness of the rate and of the hours spent on the litigation. *See Lam, Inc. V. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). Taking note of these higher customary fees, Defendants provide fee data from an economic survey published by the American Intellectual Property Law Association ("AIPLA"). (Rueh Decl.

15

¶ 7 & Ex. A.)  Defendants also supply a table of the billable rates of the attorneys and assistants whose fees they seek, ranging from $695 per hour for a partner who graduated from law school in 1982, to $190 per hour for the least expensive paralegal. (*Id.* ¶ 5.)  Notably, Plaintiff does not contend that the rates claimed by Defendants are unreasonable, but only contests the total amount.  (Pl.'s Resp. to Mot. Attorney Fees 18-20.)

After a review of Defendants' tables and exhibits in support of the Rueh Declaration, and in light of the absence of any objection from Plaintiff, the court finds the claimed rates are reasonable given the complexity and scope of this patent litigation.

### C.  Number of Hours Expended

Defendants seek to recover only the costs and fees incurred from March 5, 2009 onward.  (Rueh Decl. ¶ 12, 14.)  That date is two days after the date of the email in which Defendants made Plaintiff aware of their invalidity contentions.  (Defs.' Mot. Attorney Fees Ex. C.)  In response, Plaintiff rehashes its argument that this case is not exceptional, argues that Defendants could have moved for summary judgment in 2007 instead of "[running] up the bill," states that Defendants did not inform Plaintiff of the existence of the '974 Mazur Patent until March 2009, ponders why multiple law firms and associates were involved in the litigation, and suggests that costs be limited to the "cost of preparing the summary judgment motion based on the *Mazur* reference" or to $23,000, the approximate cost of the attorney fees motion.  (Pl.'s Resp. to Mot. Attorney Fees 18-20.)  Plaintiff makes no further objection to any particular expenditure of fees. (*Id.*)

16

Plaintiff's argument that a reasonable fee determination should be based on the approximate length or cost of the motion for attorney fees is unpersuasive, as is its rhetorical questioning of the need for multiple attorneys in a complex patent case. Plaintiff states that limiting the cost to that of preparing the summary judgment motion based on the '974 Mazur reference would be "nearly impossible," and provides the court with no authority for the proposition that a prevailing party is only entitled to § 285 fees for the costs incurred in preparing the motions on which it prevailed. Given that Defendants did not make Plaintiff aware of the '974 Mazur reference until March 2009, the court finds that Defendants have properly limited the costs and fees sought in their motion to those incurred after March 5, 2009.

Accordingly, the court finds that both Defendants' rates and hours claimed are reasonable to compensate Defendants for costs that were needlessly incurred in this exceptional case. Apart from listing their attorneys' billable rates and providing a copy of the bills they seek to have reimbursed, Defendants do not provide a table containing the total hours and charges for each attorney and paralegal. The court incorporates those bills and the remainder of Mark Rueh's Declaration and Supplemental Declaration by reference. Summarizing their charges, Defendants claim $1,862,693.00 in attorney fees for the period from March 5, 2009 to September 30, 2009, and $87,528.62 in disbursements. (Rueh Decl. ¶¶ 12-15.) In addition, Defendants claim $86,508.00 in attorney fees and $7,915.63 in disbursements incurred since November 2009. (Rueh Decl. Supp. ¶ 12.) Totaling these claimed amounts, the court awards Defendants $2,044,645.25 in costs and fees.

## V. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' Objections [Dkt. # 158] are SUSTAINED and the Magistrate Judge's Report and Recommendation [Dkt. # 157] is REJECTED.

IT IS FURTHER ORDERED that Defendants' Motion for Attorney Fees [Dkt. # 149] is GRANTED. Plaintiff is DIRECTED to pay Defendants Continental Automotive Systems U.S., Inc., TRW Automotive U.S., L.L.C., and TK Holdings, Inc. $2,044,645.25 in costs and fees.

  S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2010, by electronic and/or ordinary mail.

  S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522.

S:\Cleland\JUDGE'S DESK\C2 ORDERS\06-15756.ATI.SIEMENS.R&R.jmp.wpd